UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Andrew Ellis and Harriet Ellis,

     Plaintiffs,       **MEMORANDUM OPINION**
                   **AND ORDER**
 v.                Civil No. 12-57 ADM/SER

City of Minneapolis, a municipal
corporation, John and Jane Does 1-10,

     Defendants.

___

Andrew Ellis and Harriet Ellis, pro se.

Kristin R. Sarff, Esq., and Sara J. Lathrop, Esq., City Attorney's Office, Minneapolis, MN, on behalf of Defendants.

___

## I. INTRODUCTION

This matter is before the undersigned United States District Judge for a ruling on Defendant City of Minneapolis and John and Jane Does' (collectively, the "City Defendants") Motion to Dismiss [Docket No. 2].[1]  For the reasons stated below, the City Defendants' Motion is granted.

## II. BACKGROUND[2]

Andrew and Harriet Ellis (the "Ellises") owned a rental property (the "Property") in

---

[1] No oral argument of this motion was held because Andrew Ellis communicated to the Court that he was unable to procure counsel, that he was not confident in his ability to engage in oral argument, and that he would not be attending the hearing scheduled for July 27, 2012. July 19, 2012 Letter [Docket No. 10]. The Court, therefore, will decide the case on the written pleadings, as Ellis asked to "respectfully stand on [his] pro-se pleadings." Id.

[2] In considering the City Defendants' Motion to Dismiss, the Court takes the facts alleged in the Ellises' Complaint [Docket No. 1] to be true. See Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994). The Court will also consider public records and documents to which the Complaint refers. Illig v. Union Electric Co, 652 F.3d 971, 976 (8th Cir. 2011).

Minneapolis which was severely damaged by fire on January 10, 2006. Ellis v. City of Minneapolis ("Ellis II"), No. A07-2440, 2009 WL 113256, at *1 (Minn. Ct. App. Jan. 20, 2009) rev. denied Mar. 31, 2009; see also Compl. at 3. The City of Minneapolis (the "City") sought to demolish the Property immediately after the fire, but the demolition was postponed because Andrew Ellis stated he would provide an inspection report to assure the City that temporary shoring was feasible. Ellis v. City of Minneapolis ("Ellis I"), No. A06-1063, 2007 WL 1815743, at *1 (Minn. Ct. App. June 26, 2007). On January 12, 2006, the City required them to begin "stabilization work" or face demolition of the Property. Id. By April, no rehabilitation of the building had occurred. Id.

On April 21, the City notified the Ellises that the Property had been declared a nuisance and that on May 17, 2006, a hearing would be held before the Public Safety and Regulatory Services ("PSRS") Committee to recommend that the Property be rehabilitated or demolished. Id. The PSRS Committee held its meeting as scheduled, and after hearing from the City Director of Inspections, the Ellises and their counsel, as well as from three neighborhood members, the PSRS Committee approved the recommendation for demolition of the Property. Id. at *2. On May 26, 2006, the Minneapolis City Council voted unanimously to approve the PSRS Committee's recommendation to demolish. Id. The Ellises then appealed the demolition to the City and subsequently to the Minnesota Court of Appeals. Id. The Property was demolished in June 2006. Id.

In June 2007, the Minnesota Court of Appeals affirmed in part, reversed in part, and remanded in part because the record and findings were inadequate. Id. at *8. On remand, the City drafted new findings and provided them to members of the PSRS Committee in advance of

the November 28, 2007 meeting. Ellis II, 2009 WL 113256, at *1. The city attorney presiding over the meeting recreated the record from the May 2006 hearing, identifying the evidence upon which the PSRS Committee was basing its recommendation to demolish. Id. The Ellises did not attend the November 28, 2007 meeting, but instead sent a letter. Id. On December 7, 2007, the Minneapolis City Council approved the recommended demolition. Id. at *2. The Ellises challenged the City's finding and final order, but the Minnesota Court of Appeals found the record a sufficient basis for the decision and affirmed the City's actions. Id. at *4.

On January 9, 2012, the Ellises commenced this current action against City Defendants, and on February 21, 2012, the City Defendants filed their Motion to Dismiss.

### III.  DISCUSSION

#### A.  Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure governs a motion to dismiss for failure to state a claim. In considering a Rule 12(b)(6) motion, the court views the pleadings in the light most favorable to the nonmoving party and treats the alleged facts as true. See Ossman v. Diana Corp., 825 F. Supp. 870, 879-80 (D. Minn. 1993). Conclusions of law made by the nonmoving party, however, are not "blindly accept[ed]." Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990). A Rule 12(b)(6) motion to dismiss is granted when the factual allegations, even assumed to be true, do not entitle that party to relief. See, e.g., Taxi Connection v. Dakota, Minn. & E. R.R. Corp., 513 F.3d 823, 826-27 (8th Cir. 2008).

Pleadings must "contain a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Rule 8(a) has been interpreted to mean that a pleading must allege "enough facts to state a claim of relief that is plausible on its face." Bell Atl. Corp.

v. Twombly, 550 U.S. 544, 570 (2007). To satisfy the standard of facial plausibility, a claim must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009). This plausibility determination is "context-specific" and "requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but not 'shown'—'that the pleader is entitled to relief.'" Id. (quoting Fed. R. Civ. P. 8(a)(2)). Pro se complaints are to be "liberally construed," Estelle v. Gamble, 429 U.S. 97, 106 (1976), and held to "less stringent standards than formal pleadings drafted by lawyers." Id. (quoting Haines v. Kerner, 404 U.S. 519, 520-21 (1972)). However, "such pleadings may not be merely conclusory: the complaint must allege facts, which if true, state a claim as a matter of law." Martin v. Aubuchon, 623 F.2d 1282, 1286 (8th Cir. 1980).

### B. Analysis

The Ellises' Complaint alleges violations of the Federal Fair Housing Act ("FHA"), negligence, violations of the state building code, and violations of due process. The Complaint also seeks injunctive relief under the FHA. The City Defendants contend that the Complaint should be dismissed with prejudice for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), or in the alternative that the Ellises should provide a more definite statement as required by Federal Rule of Civil Procedure 12(e).

#### 1. The Ellises' FHA Claims

The Ellises' claims in Counts One, Two, and Six all specifically assert violations of the FHA. The FHA statute of limitations requires aggrieved parties to file a civil action "not later

than two years after the occurrence or termination of an alleged discriminatory housing practice to obtain appropriate relief." 42 U.S.C. § 3613(a)(1)(A). The statute of limitations does not run during any time in which an administrative proceeding was pending with respect to an FHA complaint or charge alleging a discriminatory housing practice. 42 U.S.C. § 3613(a)(1)(B).

Here, the FHA claims are time-barred. Whether calculated from the time of the fire in January 2006 or from the time of the Property's demolition in June 2006, the Ellises' current FHA claims are made significantly after the two-year statute of limitations provided in 42 U.S.C. § 3613. Although the Ellises argue in their Memorandum in Opposition [Docket No. 9] that the FHA violations are ongoing, no specific allegations or evidence have been offered to support this contention; rather, the only events specified in the Complaint date back to 2006. Moreover, none of the Ellises' claims allege FHA violations which were previously pursued in an administrative proceeding. Therefore, because the pending administrative exception does not apply, the Ellises' FHA claims in Counts One, Two, and Six are time-barred and are dismissed with prejudice.

### a. Count One

Even if the FHA claims were not time-barred, they would also be subject to dismissal under Rule 12(b)(6) for failure to state a claim. In Count One, the Ellises allege that the City Defendants had ministerial duties not to cause disparate impact, that they rented to protected class members, and that the City Defendants violated their ministerial duties thereby causing disparate impact. Compl. ¶¶ 195–197. The Ellises also appear to allege that the City Defendants made false statements. Compl. ¶¶ 198–201. However, under Twombly, the Ellises' Complaint must plead more than just a "formulaic recitation of the elements of a cause of action." 550 U.S. at 555. The Complaint fails to do so.

The Ellises' Complaint states that they rented, or attempted to rent, to members of protected classes. Compl. ¶ 196. The FHA does make it unlawful to "refuse to sell or rent . . . . or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(a). The Ellises' Complaint, however, fails to recite any facts to support that they rented to a member of any protected class. The Ellises also allege that the City Defendants violated a ministerial duty, see Compl. ¶¶ 195, 197, but they fail to plead how the City Defendants violated that duty. Because the Complaint merely recites the legal elements of an FHA cause of action, without alleging plausible facts to support such a claim, it fails the pleading standards of Rule 12(b)(6) and warrants dismissal. See Beck v. Lafluer, 257 F.3d 764, 766 (8th Cir. 2001) (dismissing complaint because it failed to make any allegations of defendants' direct involvement).

Finally, Count One also attempts to claim that the City Defendants violated the FHA by making and certifying false statements to government agencies. See Compl. ¶¶ 198–200. The filing of false FHA statements is actually a violation of the False Claims Act ("FCA"). See United States v. Anchor Mortg. Corp., No. 06 C 210, 2010 WL 3184210, at *5 (N.D. Ill. Aug. 12, 2010) ("[A]n application for FHA insurance nonetheless constitutes a claim within the meaning of the FCA."). A person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" or "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim" is liable for damages under the FCA. 31 U.S.C. § 3729(a)(1). The Ellises, however, have not pleaded an FCA claim, and this Court need not "divine the litigant's intent and create claims that are not clearly raised." Bediako v. Stein Mart, Inc., 354 F.3d 835, 840 (8th Cir. 2004). Further, even if the Ellises had

properly asserted an FCA claim, such a claim has not been pleaded with the required specificity. Nowhere in the Ellises' Complaint do they make a plausible factual allegation that the City Defendants knowingly made or used a false statement. Even if the Court were to accord the Ellises the latitude so that their FHA claim in Count One would be considered as a claim under the FCA, the claims language is merely conclusory and has not been properly pleaded. For all these reasons, Count One is dismissed.

### b. Count Two

In addition to being time-barred, Count Two of the Complaint also fails because it lacks the required specificity. The Ellises merely allege that the City Defendants "knew or should have known that their conduct . . . did evidence retaliation against" them for associating with protected class members, Compl. ¶¶ 205–08, but the cause of action fails to identify a single factual instance of retaliation. Accordingly, Count Two is dismissed.

### c. Count Six

The Ellises' claim for injunctive relief under the FHA in Count Six also fails for several reasons. As previously stated, it is time-barred, and as discussed more fully later, the claim for injunctive relief is barred by the doctrine of res judicata and the Rooker-Feldman doctrine. Moreover, the Ellises lack standing to assert a claim for injunctive relief. The Ellises claim that the City Defendants have violated a consent decree imposed on them in Hollman v. Cisneros, but they fail to cite the case or attach a copy of the alleged consent decree. The Ellises may be referring to a consent decree issued in the case of Hollman v. Cuomo, 92-cv-712 (D. Minn.); however, the Ellises are not listed as a party to that action, and therefore generally lack standing to challenge the City Defendants' alleged violation of that consent decree. See Blue Chip

Stamps v. Manor Drug Stores, 421 U.S. 723, 750 (1975) ("[A] well-settled line of authority from this Court establishes that a consent decree is not enforceable directly or in collateral proceedings by those who are not parties to it even though they were intended to be benefited by it."). Third parties are only permitted to enforce a consent decree when the third party has shown that the parties to the consent decree intended to confer a benefit upon the third party and intended to give that third party a "legally binding and enforceable right to that benefit." Pure Country, Inc. v. Sigma Chi Fraternity, 312 F.3d 952, 958 (8th Cir. 2002). The Ellises have made no such showing here, and therefore they lack standing to seek enforcement of this consent decree. Count Six of the Ellises' Complaint is accordingly dismissed for lack of standing.

### 2. The Ellises' Negligence Claim

In Count Three, the Ellises allege that the City Defendants were negligent in their response and conducting of the firefighting on January 10, 2006. See Compl. ¶¶ 209–214. Like the FHA claims, the negligence claim is both untimely and without merit. The statute of limitations for negligence actions in Minnesota is six years. Minn. Stat. § 541.05, subd. 1(5); Christian v. Birch, 763 N.W.2d 50, 56 (Minn. Ct. App. Mar. 24, 2009). In Minnesota, an action is not commenced until the summons is served upon the defendant. Minn. R. Civ. P. 3.01. Where state law requires service to commence an action, state law governs the state statute of limitations, not Federal Rule of Civil Procedure 3. See Johnson v. Carroll, 658 F.3d 819, 829 (Minn. 2011) (citing Anderson v. Unisys Corp., 47 F.3d 302, 309 (8th Cir. 1995)). Since the statutory limitations period began running on the date of the fire, the six-year statute of limitations elapsed on January 10, 2012. Although the Ellises filed their Complaint on January 9, 2012, they did not issue a summons until February 21, 2012. Accordingly, the negligence

claim is time-barred and therefore warrants dismissal.

Moreover, the negligence claim fails on its merits because the City Defendants did not owe any legal duty to the Ellises regarding in their firefighting strategy. The elements of negligence are: (1) duty, (2) breach, (3) causation, (4) damages. Schweich v. Ziegler, Inc., 463 N.W.2d 722, 729 (Minn. 1990). In Minnesota for more than a century, firefighting has been viewed as a general duty rather than a special duty owed to individuals. Dahlheimer v. City of Dayton, 441 N.W.2d 534, 537 (Minn. Ct. App. 1989). The Dahlheimer court determined that a city cannot be liable for the general allegations of negligent firefighting or for tactical firefighting decisions. Id. at 536, 539. In a more recent case, the Minnesota Court of Appeals held that a plaintiff cannot sue a city for negligent firefighting because no individual duty existed between the city and the plaintiffs. Woehrle v. City of Mankato, 647 N.W.2d 549, 552–53 (Minn. Ct. App. 2002). Here, the Ellises claim the City Defendants acted negligently in extinguishing the fire on the Property, but this claim fails because the City Defendants owed no individual duty to the Ellises. Therefore, the negligence claim fails on its merits and is dismissed for this reason as well.

### 3. The Ellises' Building Code and Due Process Claims

Count Four of the Ellises' Complaint alleges that the City Defendants violated state building codes by finding the Property a nuisance, refusing to allow the Ellises to repair and rehabilitate the Property, and ultimately demolishing it. Compl. ¶¶ 215–223. The Ellises also allege in Count Five that the City Defendants violated their due process rights by failing to provide them fair notice and an opportunity to be heard. Compl. ¶¶ 224–229. These claims warrant dismissal because they are barred by res judicata and the Rooker-Feldman doctrine.

### a. Res judicata

Minnesota law of res judicata analysis is that the law of the forum which rendered the first judgment controls.  Res judicata is an absolute bar to a later claim when: (1) an earlier claim involved the same set of factual circumstances; (2) the earlier claim involved the same parties or their privies; (3) there was a final judgment on the merits; and (4) the estopped party had a full and fair opportunity to litigate the matter.  State v. Joseph, 636 N.W.2d 322, 327 (Minn. 2001). Res judicata is an absolute bar in these circumstances, whether the claims were actually litigated or merely could have been litigated in the earlier action.  Id.

The Ellises are barred by res judicata from now pursuing their state law claims of building code violations.  First, the Ellises' previous appeals to the Minnesota Court of Appeals involved the same set of factual circumstances (i.e. the fire and the subsequent demolition of their house).  Second, the previous appeals involved the same parties or privies — the City of Minneapolis was a Defendant in the previous actions, and although Andrew Ellis was the only named plaintiff in the previous actions, Harriet Ellis is in privy with Andrew as a co-owner and a co-landlord.  Compl. ¶ 4.  Privity involves a person so identified in interest with another that he represents the same legal right.  Joseph, 636 N.W.2d at 327 n.2.  Here, Harriet Ellis is in privity with Andrew Ellis.

Third, the Court of Appeals made a final judgment on the merits, ruling that the demolition was proper.  Ellis II, 2009 WL 113256, at *4.  The Minnesota Supreme Court denied Andrew Ellis's petition for review, thereby making the judgment final.  Fourth, the Ellises had a full and fair opportunity to litigate this matter.  The Ellises contested the demolition decision during two city council proceedings and two appeals to the Minnesota Court of Appeals.  Ellis II,

10

2009 WL 113256, at *1. In their first appeal, the Ellises, through counsel, challenged the City's decision to demolish the Property. Ellis I, 2007 WL 1815743, at *1. In their second appeal, the Ellises argued that the City failed to specify which factors persuaded them to demolish the building instead of allowing reconstruction. Ellis II, 2009 WL 113256, at *4. Throughout these lengthy proceedings, the Ellises have had full and fair opportunity to litigate this exact issue of the appropriateness of demolition, an issue which the Minnesota Court of Appeals in 2009 definitively ruled was appropriate. Ellis II, 2009 WL 113256, at *4. Therefore, Counts Four and Five of the Complaint are barred by res judicata.

### b. Rooker-Feldman Doctrine

Counts Four and Five also warrant dismissal under the Rooker-Feldman doctrine. The Rooker-Feldman doctrine stands for the concept that federal courts lack subject matter jurisdiction over certain challenges to state court judgments. Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983). Federal courts also lack jurisdiction over federal claims "inextricably intertwined" with claims already adjudicated in state court. Fielder v. Credit Acceptance Corp., 188 F.3d 1031, 1034 (8th Cir. 1999). A claim is "inextricably intertwined" with a state court judgment when it would succeed only if the state court wrongly decided the issues or if the requested relief would effectively reverse or void a state court decision. Id. at 1034–35. The Ellises' claims in the present action are inextricably intertwined with the claims already decided by the Minnesota Court of Appeals in Ellis II. The Ellises could only prevail on their present challenges to the City Defendants' demolition determination if this Court were to find the Minnesota state courts wrong, and the Ellises could only receive relief if this Court were to reverse the Minnesota state

decision in Ellis II.  Therefore, the Ellises' current claims in Counts Four and Five are barred by the Rooker-Feldman doctrine and are dismissed with prejudice.

### IV.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion to Dismiss [Docket No. 2] is **GRANTED**; and

2. Plaintiff's Complaint [Docket No. 1] is **DISMISSED with prejudice**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

BY THE COURT:

s/Ann D. Montgomery

ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: August 15, 2012